IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH MILLER,<br><br>  Plaintiff(s),<br><br>  vs.<br><br>INTERNATIONAL BUSINESS MACHINES, et al,<br><br>  Defendant(s)._____/ | No. C 02-2118 MJJ (MEJ)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR TO MODIFY THE COURT'S FEBRUARY 6, 2006 ORDER** |

## I.   INTRODUCTION

Before the Court is plaintiff Ralph Miller's Motion for an Order Modifying the Court's February 6, 2006 Order. In it, Miller seeks a modification of the February 6 Order as it relates to: (1) the imposition of sanctions related to the depositions of Ludwig Lai and Moni Miyashita; (2) production of documents related to communications with Victor Paddock; and (3) the amount of time permitted for production. After consideration of the parties' papers, oral arguments at the April 6, 2006 hearing, relevant legal authority, and good cause appearing, the Court hereby GRANTS IN PART AND DENIES IN PART Miller's motion for the reasons set forth below.

## II.   BACKGROUND

As there are two main issues addressed in Miller's motion, the Court shall provide a separate background for each issue.

**A.     Depositions of Ludwig Lai and Moni Miyashita**

On November 28, 2005, the parties filed a joint discovery dispute letter on several outstanding disputes. Doc. #189. Relevant here is the dispute concerning the depositions of Ludwig Lai and Moni Miyashita, two IBM employees. Although their depositions were originally scheduled to go forward the week of November 14, 2005 in New York, Miller chose not to take the depositions at that time because the lawyer he wanted to have help him conduct them, William F. Mueller, is not admitted to practice in California and had not filed a *pro hac vice* motion in this action.

On November 29, 2005, the Court issued an order permitting a continuance of the Lai and Miyashita depositions so that Mr. Mueller could file a motion to appear for the purpose of conducting the depositions. Doc. #193. In the November 29 Order, the Court permitted Mr. Mueller ten days to file his motion and, if he filed the motion, ordered the parties to immediately meet and confer for the purpose of scheduling the depositions. On December 12, Mr. Mueller filed his motion to appear *pro hac vice* (Doc. #207), which the Court granted on January 4, 2006. Doc. #234.

On January 12, 2006, IBM filed a motion to vacate the Lai and Miyashita depositions. Doc. #265. In its motion, IBM argued that when the parties had an in person meeting on December 21, 2005, Miller requested that the Lai and Miyashita depositions take place on January 11 or 12, 2006. Based on his request, IBM's counsel notified Miller on December 22 that January 12 was available. IBM also wrote Miller on January 3 to confirm the January 12 date as Miller had not responded to the December 22 confirmation. On January 4, 2006, Miller responded that Mr. Mueller was "still available on the dates indicated." On January 6, IBM again wrote to confirm the depositions. Miller responded on January 9 that he "asked Mr. Mueller to communicate directly with [IBM] on this matter." On January 9, IBM sent an e-mail to both Miller and Mr. Mueller regarding the depositions. On January 10, Mr. Mueller sent an e-mail stating that he "left a voicemail earlier in the day adjourning these depositions." As a result, IBM moved for an order removing the requirement that it make Lai and Miyashita available for depositions, and requested sanctions for fees and expenses related to the attempted scheduling of the depositions, including cancellation fees

2

1 for hotel and airline reservations. In response to IBM's motion and evidence contained therein,
2 Miller argued that IBM's counsel refused to cooperate in the scheduling of the depositions.

3 On February 6, 2006, the Court denied IBM's motion to vacate the depositions. However,
4 the Court also ordered that if Miller wished to proceed with them, that the depositions were to take
5 place within 30 days from the date of the Order and that Miller was to pay all reasonable expenses
6 incurred by IBM as a result of any newly-scheduled depositions, including attorney's fees and
7 expenses. In making this Order, the Court noted that it had permitted Miller to delay these
8 depositions at his request and that IBM should not be forced to continually prepare for and pay
9 expenses related to them.

10 On February 16, 2006, Miller filed objections and a request for reconsideration of the
11 February 6 Order. Doc. #324. So as to provide final clarification on the issue, the Court granted
12 Miller's request to file a motion for reconsideration and ordered him to file a motion in compliance
13 with Civil Local Rule 7. Doc. #333.

14 **B.     Victor Paddock Documents**

15 The November 28, 2005 joint letter also contained a dispute concerning communications
16 between Miller and Victor Paddock. Miller claimed that he reasonably believed Mr. Paddock was
17 acting as Best-of-China.com's ("BCC") counsel and any communications between him and Mr.
18 Paddock were protected by the attorney-client privilege. Miller, however, presented no evidence in
19 support of this claim, other than that he had a long-standing personal and professional relationship
20 with Mr. Paddock. In contrast, IBM presented Mr. Paddock's deposition testimony, in which he
21 stated that he was not acting as a lawyer in giving BCC advice and Miller knew than he had not
22 practiced as a lawyer for over 25 years.

23 Based on the parties' letter and attached evidence, the Court entered an order on November
24 30, 2005 (Doc. #199) compelling Miller to produce all relevant communications with Mr. Paddock
25 unless he filed a sworn declaration from Mr. Paddock attesting that he acted as Miller's attorney in
26 giving BCC advice. Miller filed an objection under FRCP 72(a) (Doc. #202), which Judge Jenkins
27 overruled on December 20, 2005. Doc. #220. Miller then appealed the ruling to the Ninth Circuit,

28

3

1 which dismissed the appeal for lack of jurisdiction on February 28, 2005.

2 When Miller failed to provide the Paddock documents, on January 12, 2006, IBM again moved to compel Miller to produce them, and for sanctions for his failure to do so.  Doc. #259. Miller filed no opposition to IBM's motion.  Instead, on January 26, 2006, his counsel, William F. Mueller, filed a declaration in which he averred that he wanted to reconsider the Paddock document issue and, given his recent appearance in the case, asked for thirty days to evaluate the issue.  Doc. #288.  On February 6, 2006, the Court granted Miller's counsel's request for additional time, but warned that Miller must show good cause for any document he continued to designate confidential. Doc. #315.

On February 16, 2006, Miller filed objections and a request for reconsideration of the February 6 Order.  Doc. #324.  So as to provide final clarification on the issue, the Court granted Miller's request to file a motion for reconsideration and ordered him to file a motion in compliance with Civil Local Rule 7.  Doc. #333.

**C.  Procedural Background**

On March 2, 2006, Miller filed a Motion for an Order Modifying the Court's February 6, 2006 Order (Doc. #347), as well as the Declaration of William F. Mueller in support thereof (Doc. #348).

On March 9, 2006, IBM filed an Opposition to Miller's motion (Doc. #356), as well as the Declaration of Loren Kieve in support thereof (Doc. #357).

On March 17, 2006, Miller filed a Reply (Doc. #365), as well as the Declaration of William F. Mueller in support thereof (Doc. #366).

On March 17, 2006, IBM filed a Motion (a) for Leave to File Surreply to Miller's March 17, 2006 Reply in Support of His Motion to Modify and (b) to Strike New Matter Submitted for the First Time with Plaintiff's Reply.  Doc. #368.  In its motion, IBM requested the opportunity to respond to statements made in Miller's reply that it argued were demonstrably false.  IBM also sought to strike new evidence submitted for the first time in Miller's reply.

On March 20, 2006, Miller filed the Declaration of William F. Mueller in Opposition to

4

IBM's motion to file a surreply. Doc. #370.

On March 20, 2006, IBM filed a Response to Mueller's declaration. Doc. #371.

On March 21, 2006, the Court issued an order permitting the parties' supplemental briefing of March 17 and 20, and granting IBM the opportunity to file a surreply addressing only the portions of Mr. Paddock's deposition transcript. Doc. #372.

On March 22, 2006, IBM filed a Surreply in opposition to Miller's motion. Doc. #376.

### III.   DISCUSSION

**A.   Legal Standard**

Although Miller's motion to modify does not comply with the Civil Local Rules, the Court shall construe it as a Motion for Reconsideration under Civil Local Rule 7-9 and address the merits of the motion. Under Local Rule 7-9(b), Plaintiff must specifically show:

> (1)   That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order;
>
> (2)   The emergence of new material facts or change of law occurring after the time of such order; or
>
> (3)   A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

**B.   Application to the Case at Bar**

    1.   <u>Lai and Miyashita depositions</u>

In his motion, Miller argues that IBM scheduled the depositions for January 12, 2006 after conferring with him, but not his attorney, and that IBM's counsel should not have assumed that the depositions would go forward without confirmation from his attorney. Miller also argues that, at most, the Court should only order him to pay IBM its lost costs of $460.00 related to cancelled hotel and airline reservations.

In response, IBM argues that Miller has not presented any newly discovered evidence or argued any of the other reasons warranting reconsideration under Civil Local Rule 7-9. As to its

5

1 attorney's fees, IBM has agreed not to seek its costs for preparing for the depositions and is willing
2 to lower its fees to $10,400.

3 Upon review of the parties' arguments, the Court finds good cause exists to modify its
4 February 6 Order and hereby VACATES the requirement that Miller pay IBM's reasonable
5 attorney's fees and costs in connection with the Lai and Miyashita. Miller shall only pay IBM its
6 out-of-pocket expenses incurred as a result of attempting to schedule the depositions. However,
7 given Miller's actions regarding discovery in this case, the Court hereby VACATES its order for
8 IBM to make Lai and Miyashita available for deposition.

9 In his recitation of the facts leading up to his motion, Miller seems to ignore the essence of
10 the Court's November 29 Order - the expedited resolution of outstanding discovery. On November
11 29, the Court ordered Miller to promptly file a motion for admission *pro hac vice* of Mr. Mueller
12 and, if he did so, to "immediately meet and confer for the purpose of scheduling the depositions."
13 Doc. #193 (emphasis added). To emphasize this directive, the Court also ordered that the
14 depositions were to take place within two weeks of the Court's order on the *pro hac vice* motion.
15 Despite this directive, and IBM's repeated attempts at scheduling the depositions, Miller chose to
16 ignore the Court's order and informed IBM that he would not schedule the depositions until after the
17 Court issued its order on the *pro hac vice* motion. Doc. #266, Ex. B.

18 Further, Miller argues that IBM scheduled a date for January 12, 2006 after conferring with
19 Miller, but without conferring with Mr. Mueller. However, Miller informed IBM that Mr. Mueller
20 was available that date. *Id.*, Ex. E. It is irrelevant that IBM's counsel did not contact Mr. Mueller
21 during this time because Miller, still acting *pro se*, conferred with IBM to schedule the depositions
22 for January 12 and informed IBM that Mr. Mueller was available on that date. Despite Miller's
23 argument that IBM's counsel should have conferred with Mr. Mueller, the Court shall not fault
24 IBM's counsel for attempting to comply with the November 29 Order despite Miller's disregard of it.

25 Based on this record and Miller's actions regarding discovery matters in this case, the Court
26 finds that Miller has shown little, if any, regard for the discovery process and the Court's previous
27 orders. Accordingly, IBM need not make Lai and Miyashita available for depositions. However,

28

6

1  Miller must pay IBM's counsel $460.00 in out-of-pocket expenses by April 28, 2006.

### 2. Victor Paddock documents

As to the Paddock documents, Miller argues that there can be no dispute that Mr. Paddock is a member of the State Bar of California and that he provided legal services. In support of his motion, Miller provides documents that he claims clearly indicate that Mr. Paddock was a legal advisor to BCC. Miller requests that the Court, despite any testimony by Mr. Paddock to the contrary, recognize that Mr. Paddock was a legal advisor to BCC in the company's subjective view.

In response, IBM argues that Mr. Paddock has testified without equivocation that he was not acting as legal counsel for BCC and, on this ground alone, Miller's motion should be denied. IBM further argues that Mr. Paddock never worked for Miller individually on this matter, and that BCC is a "defunct" corporation, as the second amended complaint makes clear, so that there is no longer any "client" for which an "attorney-client" relationship exists. Even if Mr. Paddock were acting as an attorney, IBM argues that not all communications with him are necessarily privileged because Miller has made no attempt to show that the advice given was actually legal advice, rather than business advice.

The attorney-client privilege protects confidential communications between a client and an attorney from disclosure. This privilege applies when "necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney." *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992). There are eight essential elements to the privilege: (1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived. *United States v. Martin*, 278 F.3d 988 (9th Cir. 2002). The party asserting the attorney-client privilege has the burden of establishing all of the above elements and, even if established, the privilege is strictly construed. *Id.* at 999-1000.

A party withholding documents as privileged should identify and describe the documents in

7

1 sufficient detail to enable the demanding party "to assess the applicability of the privilege or
2 protection." Fed. R. Civ. P. 26(b)(5).

3 Here, IBM has raised serious doubt as to whether Mr. Paddock was an attorney working for
4 Miller or BCC. Mr. Paddock was at no time since at least January 1, 1999 - *i.e.*, during the time he
5 was providing advice to BCC - an active member of the bar. If Mr. Paddock were providing legal
6 advice while an inactive member of the bar, this raises serious ethical issues, not only for the Court,
7 but for the State Bar of California as well. Moreover, Mr. Paddock testified that he was not
8 providing legal advice to BCC or Miller. When asked whether he represented to Miller that he was
9 acting as BCC's attorney, Mr. Paddock stated: "I wouldn't affirmatively have said to him that I was
10 acting as a lawyer. I did not understand that I was being hired to represent him." Mueller Reply
11 Decl., Ex. A at 27:12-15.

12 Despite this evidence, Miller now submits copies of cover sheets of invoices from Mr.
13 Paddock to BCC that he argues indicate that his bill was for legal services rendered. Mueller Decl.,
14 Ex. F. As IBM correctly points out, Miller provided no evidentiary basis to authenticate or admit
15 these documents as evidence. To obtain clarification on the issue of the invoices and Mr. Paddock's
16 services, on March 31, 2006, the Court ordered Miller to file: (1) a declaration from Victor Paddock
17 (a) authenticating the invoices for legal services filed by Miller, (b) attesting as to whether the term
18 "legal services" evidences an attorney-client relationship, and (c) addressing why he, an inactive
19 member of the State Bar of California and contrary to his deposition testimony, billed Miller for
20 legal services; and (2) a declaration from Miller stating the reasons why he reasonably believed that
21 an attorney-client relationship exists. Doc. #391.

22 On April 6, 2006, Miller filed the two declarations. Doc. #409. In his declaration, Mr.
23 Paddock states that he did not intend to establish an attorney-client relationship because he had been
24 an inactive member of the State Bar since the late 1990s. As to the legal service invoices, Mr.
25 Paddock states that he submitted invoices "using his old letterhead which due to inadvertence and
26 mistake referenced 'legal services' in place and instead of what should have been reflected, i.e.
27 Business Consultant Services." Mr. Paddock's declaration is troubling. The invoices submitted to
28

8

1  the Court do not appear to be "old letterhead." Rather, the invoices before the Court are fax
2  transmittal sheets and are handwritten. Moreover, the invoices have different subject lines, such as
3  "INVOICE FOR LEGAL SERVICES," "Legal Services/Invoice," "VICTOR PADDOCK/LEGAL
4  FEES," and "LEGAL SERVICES." *See, e.g.,* March 2, 2006 Mueller Decl., Ex. F. Despite Mr.
5  Paddock's declaration to the contrary, it is clear that the legal service invoices do not use old
6  letterhead and he billed for legal services despite being an inactive member of the State Bar.

7  Given the evidence now before it, the Court finds that Miller could have reasonably believed
8  that Mr. Paddock was acting as a lawyer and the attorney-client privilege applies as to
9  communications between Miller and Mr. Paddock. *See, e.g., United States v. Keplinger*, 776 F.2d
10 678, 701 ("We think no individual attorney-client relationship can be inferred without some finding
11 that the potential client's subjective belief is minimally reasonable."); *In re Grand Jury Subpoena*
12 *Duces Tecum*, 415 F.3d 333, 339 (4th Cir. 2005). Despite Mr. Paddock's testimony otherwise, it is
13 clear that a person billed for legal services could reasonably believe that an attorney-client
14 relationship exists.

15 However, Miller should be mindful that he cannot claim a blanket privilege for all Paddock
16 documents. Accordingly, within 14 days from the date of this Order, he shall produce all non-
17 privileged Paddock documents, including fee arrangements and billing statements that provide a
18 general description of the work done, and documents that evidence *business* advice rather than *legal*
19 advice. *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992); *see also*
20 *Montgomery County v. MicroVote Corp.*, 175 F.3d 296, 304 (3rd Cir. 1999); *U.S. v. Abrahams*, 905
21 F.2d 1276, 1283 (9th Cir. 1990); *U.S. v. Chen*, 99 F.2d 1495, 1501 (9th Cir. 1996); *U.S. v. Chevron*
22 *Texaco Corp.*, 241 F.Supp.2d 1065, 1076 (N.D. Cal. 2002).

23 Within 14 days he shall also produce a privilege log that is sufficiently detailed and
24 informative to justify the privilege for each withheld document. With respect to each
25 communication for which Miller claims privilege, he shall identify: (a) all persons making and
26 receiving the privileged communication; (b) the steps taken to ensure the confidentiality of the
27 communication, including affirmation that no unauthorized persons have received the

9

communication; (c) the date of the communication; and (d) the subject matter of the communication. Failure to comply with these requirements shall be deemed a waiver of the privilege.

### IV.   CONCLUSION

Based on the foregoing analysis, the Court hereby ORDERS as follows:

1) the Lai and Miyashita depositions are hereby VACATED.  Miller shall pay IBM $460.00 in out-of-pocket expenses by April 28, 2006; and

2) Miller may claim the attorney-client privilege for Victor Paddock's documents.  However, he should be mindful that he cannot claim a blanket privilege for all the documents and must produce all non-privileged documents, as well as a privilege log as detailed above, within 14 days from the date of this Order.

Failure to comply with this Order may result in the imposition of further sanctions, including waiver of the attorney-client privilege and/or termination of this case.

**IT IS SO ORDERED.**

Dated: April 14, 2006

MARIA-ELENA JAMES
United States Magistrate Judge

10