IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH MILLER,<br><br>    Plaintiff(s),<br><br>vs.<br><br>INTERNATIONAL BUSINESS MACHINES, et al,<br><br>    Defendant(s)._____/ | No. C 02-2118 MJJ (MEJ)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART IBM'S MOTION FOR SANCTIONS** |

## I.  INTRODUCTION

Before the Court is defendant International Business Machines Corporation's ("IBM") Motion for Sanctions, filed March 16, 2006. Doc. #362. In its motion, IBM moves to preclude plaintiff Ralph Miller from offering evidence on any of the matters for which he has failed to comply with the Court's previous orders of November 30, 2005 and February 6, 2006. After consideration of the parties' papers, oral arguments at the April 13, 2006 hearing, relevant legal authority, and good cause appearing, the Court hereby GRANTS IN PART AND DENIES IN PART IBM's motion for the reasons set forth below.

## II.  BACKGROUND

**A.  Interrogatories and Document Requests**

On November 28, 2005, the parties filed a joint discovery dispute letter in which defendant International Business Machines ("IBM") requested a court order compelling plaintiff Ralph Miller to respond to interrogatories and produce documents. Doc. #189. As to the interrogatories, IBM

argued that Miller's responses were evasive and in some cases provided no answer at all. As to the document requests, IBM argued that Miller had failed to produce: (1) documents relating to his claim that Best-of-China.com ("BCC") assigned him its rights; (2) documents relating to the manner in which BCC entered into the subscription agreement with IBM; and (3) documents supporting each of Miller's factual contentions. IBM also argued that communications between Miller and Victor Paddock were not protected by the attorney-client privilege because Mr. Paddock testified in his deposition that he was not acting as a lawyer in giving BCC advice, and Miller knew that he had not practiced as a lawyer for over 25 years.

On November 30, 2005, the Court issued an order granting in part and denying in part IBM's requests. Doc. #199. In its November 30 Order, the Court provided specific instructions as to how Miller was required to respond to each interrogatory. The Court also ordered Miller to produce all responsive documents. As to communications between Miller and Victor Paddock, the Court ordered Miller to produce all withheld documents unless he served on IBM a sworn declaration from Mr. Paddock attesting that he acted as Miller's attorney in giving BCC advice in relation to the claims in this case.

Miller served IBM with "amended supplemental responses" on December 16 and 23, 2005. Decl. of Loren Kieve in Support of Motion to Compel Complete Interrogatory Responses (Doc. #257), Exs. D and E. Arguing that Miller's supplemental responses did not comply with the Court's November 30 Order, on January 12, 2006, IBM filed a motion to compel complete interrogatory responses and for sanctions for Miller's violations of the November 30 Order. Doc. #256. In its motion, IBM requested a further order that: (1) either (a) compelled Miller to comply with the Court's previous order, or (b) limited him to the "proof" contained in his limited discovery responses; and (2) imposed sanctions for Miller's failure to comply. In response, Miller argued that he had retained counsel and requested that the Court permit new counsel additional time to assure compliance with the November 30 Order. Doc. #301.

As to IBM's document requests, IBM again moved to compel production on January 12, 2006 (Doc. #259), arguing that Miller had not complied with the November 30 Order, including his

2

1 failure to produce an un-redacted copy of a document he claims constitutes the assignment by BCC
2 of its rights to him, the corporate records of BCC, and the Paddock documents.  IBM further argued
3 that Miller had not produced a complete set of e-mails relevant to this litigation.  Miller again
4 requested that the Court permit new counsel additional time to assure compliance with the
5 November 30 Order.  Doc. #306.

6 On February 6, 2006, the Court granted Miller and his new counsel 30 additional days to
7 comply with the November 30 Order.  Doc. #315.  However, the Court stressed that if Miller failed
8 to provide full responses as ordered, it would "consider the imposition of sanctions, including
9 limiting Miller's responses to those contained in his various responses, as well as attorney's fees and
10 expenses."

**B.     Witness Depositions and Expert Discovery**

12 On November 22, 2005, IBM served Miller with interrogatories and document requests
13 relating to Miller's experts.  Decl. of Loren Kieve in Support of IBM's Motion for Sanctions for
14 Failure to Provide Expert Discovery (Doc. #254), Ex. E.  In response, Miller listed three retained
15 experts and twelve "non-retained experts," including himself.  *Id.*, Ex. F.  Miller's twelve "non-
16 retained" experts included individuals first identified as "fact" witnesses on November 18, 2005 (the
17 fact discovery cut-off date) - Norm Capper, Edward Nixon, and Yuri Voldarsy.  *Id.*, Exs. B and D.
18 Miller also identified as "non-retained" experts Neil Blackley, Dimitry Dukhovny, and Michael
19 Walker.

20 On January 12, 2006, IBM filed a motion for sanctions for failure to provide expert
21 discovery.  Doc. #253.  In its motion, IBM sought an order precluding Miller from, among other
22 things, introducing any testimony from his three retained experts and his previously undisclosed
23 non-retained experts.  On February 6, 2006, the Court issued an order that required Miller to make
24 available for deposition any "non-retained experts" or fact witnesses that were disclosed on or after
25 the fact discovery cut-off date - Norm Capper, Edward Nixon, Yuri Voladarsy, Neil Blackley,
26 Dimitry Dukhovny, and Michael Walker.  Doc. #315.  The February 6 Order required Miller to
27 make the named witnesses available for deposition within 30 days from the date of the Order and

warned that the Court may consider sanctions, including preclusion of their testimony, if Miller failed to make them available. The February 6 Order also directed Miller to furnish IBM with updated expert reports and to respond to IBM's outstanding expert discovery requests.

**C.     IBM's Motion for Sanctions**

On March 16, 2006, IBM filed the present motion for sanctions (Doc. #362), as well as the Declaration of Loren Kieve in support thereof. Doc. #363.

On March 30, 2006, Miller filed an Opposition, as well as the Declaration of William F. Mueller in support thereof. Doc. #390.

On April 4, 2006, IBM filed a Reply (Doc. #402), as well as the Declaration of Loren Kieve in support thereof. Doc. #403.

On April 13, 2006, the Court held a hearing on the matter. William F. Mueller appeared on behalf of Miller. Loren Kieve appeared on behalf of IBM.

### III.     DISCUSSION

In its motion for sanctions, IBM argues that Miller's responses to Interrogatories 2, 5, 6 and 7 are still deficient. As to its document requests, IBM argues that Miller has: (1) still not produced an unredacted copy of the alleged assignment; (2) produced no BCC corporate records; (3) not produced e-mails and accompanying attachments together; (4) not produced the Paddock documents; (5) not supplied a sworn affidavit; and (6) ignored the Court's order on confidential document designations. IBM also argues that Miller has failed to make his "non-retained expert" witnesses available for deposition, and failed to supply the expert discovery the Court ordered him to provide. Pursuant to FRCP 37(b)(2), IBM argues that Miller should not be permitted to introduce any evidence on these topics. The Court shall address each argument in turn.

**A.     Legal Standard**

Under FRCP 37, where a party fails to obey a discovery order, the Court may enter an order "refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(B). Such orders are appropriate where a party has failed to provide meaningful discovery responses on

4

key issues despite a court order to do so. *United States v. Sumitomo Marine & Fire Ins. Co., Ltd.*, 617 F.2d 1365, 1369 (9th Cir. 1980) (upholding order precluding party from introducing evidence of damages where party failed to provide discovery responses for eighteen months); *C&W Construction Co. v. Brotherhood of Carpenters and Joiners of America, Local 745, ALF-CIO*, 108 F.R.D. 389 (N.D. Cal. 1985) (imposing sanctions precluding party from introducing evidence at trial regarding subjects covered by interrogatories where party, inter alia, made Fifth Amendment assertions, delayed in responding to interrogatories and never fully responded to them, and appointed a "person most knowledgeable" for deposition who had no knowledge of the facts); *Papagni v. Hammersmith Trust*, 1999 WL 33292939 (N.D. Cal. 1999) (imposing sanctions taking allegations in complaint as established and precluding contrary evidence where party delayed in responding to discovery).

**B.    Application to the Case at Bar**

    1.    <u>Interrogatories</u>

In its motion, IBM argues that Miller's responses to interrogatories 2, 5, 6 and 7 are still deficient.

    *a.    Interrogatory 2*

Interrogatory 2 asks that, for each person identified in Miller's or IBM's initial disclosures, Miller provide what he claims that person did or did not do with respect to his claims in this action, including information as to particular dates, meetings or communications with those individuals. Kieve Decl. in Support of Motion to Compel Complete Interrogatory Responses (Doc. #257), Ex. A. The Court's November 30, 2005 Order directed Miller to "provide, to the best of his knowledge, what each individual did or did not do that is relevant to his claims. Mr. Miller shall also direct IBM's attention to the specific documents he claims detail the remaining information requested in Interrogatory No. 2." Doc. #199.

On March 6, 2006, Miller served objections and consolidated responses to IBM's interrogatories. Kieve Decl. in Support of Opposition to March 2, 2006 Motion (Doc. #357), Ex. G. In his response, Miller lists the individuals from the parties' initial disclosures and states their

5

general participation relevant to his claims. However, Miller's response also states: "Plaintiff is informed that among the thousands of meetings that occurred around the world relating to the BCC Portal Project, significant meetings include but are not limited to the following meetings which are further detailed in the chart contained in Appendix B hereto."

IBM argues that Miller's response is deficient because it admits that he is not providing information about each significant meeting that took place, let alone all meetings in which the individuals in the parties' initial disclosures took part. In response, Miller argues that he cannot provide a script of each meeting over a three year period and has given IBM an extensive idea of what occurred at what time.

Upon review of the parties' arguments and Miller's responses, the Court finds that full preclusion sanctions are inappropriate. Miller's response, including Appendix B, provides information requested in Interrogatory 2. However, to the extent that IBM argues that it does not provide information about all meetings in which the individuals took part, the Court finds it appropriate to preclude Miller from using any information he did not provide in response to Interrogatory 2. Accordingly, Miller is PRECLUDED from submitting any such evidence in support of his case, unless, within 14 days from the date of this Order, Miller serves on IBM a discovery log detailing all previous discovery responses that provide the information requested in Interrogatory 2. Miller must provide <u>specific</u> references (i.e., date of production, Bates and/or page numbers, and labels) which enable IBM to locate the information about meetings with the individuals. For any information not found in Interrogatory 2 or this discovery log, Miller is PRECLUDED from introducing the information as evidence in this case.

        *b.*     *Interrogatory 5*

Interrogatory 5 asks Miller to describe each communication he had relating to any fact alleged in the second amended complaint with any person other than employees or representatives of any defendant, including (a) each participant, (b) the place where each person was during that communication, (c) the date and time of the communication, (d) what each person said or did during that communication, and (e) to identify each document discussed or prepared during or as a result of

6

1 that communication. Doc. #257, Ex. A. The Court's November 30 Order instructed Miller to "direct
2 IBM's attention to the specific documents he claims detail the information requested in Interrogatory
3 No. 5." Doc. #199.

4 Miller's March 6 response to Interrogatory 5 lists entities with which he communicated.
5 Doc. #357, Ex. G. It also states: "See Response Log ot Interrogatory No. 5 Appendix C for select
6 meetings relating to IBM matters," and "Meetings were held at various times and intervals over a
7 two year period as reflected in documents referencing communications with the below individuals
8 and companies as has been produced." *Id.*

9 IBM argues that this response admits that Miller is not providing all information about all
10 communications, just select communications. IBM directs the Court's attention to Appendix C and
11 argues that it does not include documents detailing all of the information requested in Interrogatory
12 5 because it lists only eight documents, while Miller's response lists 92 entities with whom he
13 communicated. In response, Miller argues that he has done the best job possible to respond in detail
14 to the requested information, but a transcript of every meeting is not available, nor is there any way
15 to identify every meeting.

16 Upon review of the parties' arguments and Miller's responses, it is clear that Miller has not
17 responded as fully as possible. As IBM points out, Miller's response to Interrogatory 5 lists only
18 eight documents while listing 92 entities with whom he communicated. As the Court's November 30
19 Order instructed Miller to direct IBM's attention to the specific documents he claims detail the
20 information requested in Interrogatory No. 5, the Court finds it appropriate to limit his evidence to
21 the eight documents he provided in response. Accordingly, Miller may use his response to
22 Interrogatory 5 as evidence, but is hereby PRECLUDED from using any documents indicating
23 communication with the 92 entities, with the exception of the eight documents listed in Appendix C.

25 To the extent that Miller's response also provides that documents referencing
26 communications with the 92 entities have been produced, he is PRECLUDED from submitting any
27 such evidence in support of his case, unless, within 14 days from the date of this Order, Miller

7

1  serves on IBM a discovery log detailing all previous discovery responses that provide the
2  information requested in Interrogatory 5.  Miller must provide <u>specific</u> references (i.e., date of
3  production, Bates and/or page numbers, and labels) which enable IBM to locate the information for
4  the 92 entities without searching.  For any information not found in Interrogatory 5 or this discovery
5  log, Miller is PRECLUDED from introducing the information as evidence.

        *c.*      *Interrogatories 6 and 7*

7         Interrogatory 6 asks Miller to itemize each element of damages he claims and to state the
8  basis for which he claims he is entitled to that element of damages.  Doc. #257, Ex. A.  The Court's
9  November 30 Order instructed Miller to "provide, to the best of his knowledge, the contractual or
10 other basis for which he claims he is entitled to specific elements of his claims for damages.  If the
11 information is contained in documents already produced, Mr. Miller shall direct IBM's attention to
12 specific documents."  Doc. #199.

13        Miller's March 6 response to Interrogatory 6 provides damage calculations and states that
14 they are supported by documents in Dr. Jerald Udinsky's Expert Report and the contracts on which
15 Miller is suing IBM.  Doc. #357, Ex. G.  IBM argues that these source documents are not identified
16 in Miller's response or in Dr. Udinsky's report.  In response, Miller argues that his response
17 identifies several contracts which are deemed to be violated, along with appropriate calculations.

18        Interrogatory 7 asks Miller to state in detail how he calculates each element of damages he
19 claims in this action and identify each document that relates to or supports that element of damages.
20 Doc. #257, Ex. A.  The Court's November 30 Order directed Miller to "state how he calculates each
21 element of damages and identify the specific documents he claims relate or support each element of
22 damages . . ."  Doc. #199.

23        Miller's March 6 response to Interrogatory 7 provides a calculations chart as an explanation
24 for how he calculates damages.  Doc. #357, Ex. G.  It also references his response to Interrogatory 6,
25 which states that the damage calculations are supported by documents in Dr. Jerald Udinsky's Expert
26 Report and the contracts on which Miller is suing IBM.  IBM argues that the chart is unintelligible
27 and does not give IBM a clue as to how Miller is calculating his damages.  In response, Miller

8

argues that the fact that IBM claims it does not understand the chart does not mean that the response or the chart are unintelligible.

Upon review of Miller's responses, the Court finds that full preclusion sanctions are inappropriate. In response to the Court's Order November 30 Order, Miller provided a chart showing his damage claims, and identified the contracts and Dr. Udinsky's report as the documents he claims support each element of damages. While this information may not be as detailed as IBM wishes, it does limit Miller as to what evidence he may use to support his damage claims. Moreover, the Court also recognizes IBM's argument that it is still unable to discern which documents Miller uses to base his damage claims because the source documents are not identified in Miller's response. Accordingly, the Court finds it appropriate to limit Miller's damage calculations to his interrogatory responses. Thus, Miller may only use his responses to Interrogatories 6 and 7, Dr. Udinsky's report, and the contracts on which he is suing. Miller is hereby PRECLUDED from using any other documents or calculations as evidence of his damage claims.

2. Document Requests

Next, IBM argues that Miller has: (1) still not produced an unredacted copy of BCC's assignment; (2) produced no BCC corporate records; (3) not produced e-mails and accompanying attachments together; (4) not produced the Paddock documents; (5) not supplied a sworn affidavit; and (6) ignored the Court's order on confidential document designations.

*a.    unredacted assignment*

On March 6, 2006, Miller produced an unredacted copy of the BCC "Closing Resolution," which assigns BCC's rights to Miller. Kieve Decl. (Doc. #357), Ex. D. IBM argues that the copy produced is unsigned and it is still waiting for a signed document. However, in its Reply, IBM states that Miller provided a signed copy on March 27, 2006. Accordingly, this issue is moot. Although IBM also argues that the assignment should be precluded because its production was untimely, to do so would leave Miller without a document assigning BCC's rights to Miller.

*b.    BCC corporate records*

IBM also argues that Miller has failed to produced BCC's corporate records. As this issue is

9

the subject of another motion pending before it, IBM's March 16, 2006 *Motion to Compel Plaintiff Ralph Miller to Produce Documents in the Possession of the Former Altheimer & Grey Law Firm* (Doc.## 359-61), the Court shall not address the BCC records here.

    *c.*  *Miller's failure to produce e-mails and accompanying attachments together*

In its February 6 Order, the Court ordered Miller to produce emails with the attachments physically attached to the emails to which they belong. On March 6, 2006, Miller produced certain electronic documents. Kieve Decl. (Doc. #357), Ex. G. IBM argues that Miller did not produce emails and attachments physically attached to one another. In response, Miller argues that the attachments were produced to IBM as files on a disk, and he has identified the specific emails to which the produced files were referenced. Miller also argues that he should not be compelled to guess as to which attachments belong to which emails when these cannot be determined with certainty, particularly when the bulk of the e-mails and attachments originated with IBM.

It is not clear how Miller can argue that he has identified specific email to which the produced files were referenced, while at the same time stating that he cannot determine which attachments belong to which emails. Accordingly, within 14 days from the date of this Order, Miller shall either: (a) produce the relevant emails with the attachments physically attached, or (b) provide <u>specific</u> references (i.e., date of production, Bates and/or page numbers, and labels) which enable IBM to identify which attachments belong to which emails. If Miller fails to comply with this order, he shall be precluded from using and emails and/or attachments that are not properly attached to each other.

    *d.*  *Paddock documents*

IBM also argues that Miller has failed to produce documents from Victor Paddock. As this issue is the subject of another motion pending before it, Miller's March 2, 2006 *Motion for an Order Modifying the Court's February 6, 2006 Order* (Doc. #347), *the Court shall not address the Paddock* documents here.

    *e.*  *Miller's sworn declaration*

In its February 6 Order, the Court also ordered Miller to serve on IBM a sworn affidavit fully

10

describing why he was unable to produce any electronic files not produced that are relevant to this litigation. IBM contends that Miller failed to produce an affidavit. In response, Miller argues that IBM's motion "does not state what kind of sworn Affidavit it wants or why it has reason to doubt the legal positions being exchanged on such items as the Altheimer & Gray or Paddock documents."

It is unclear why Miller argues that he did not respond to the Court's February 6 Order because IBM does not state what kind of affidavit it wants. Had Miller and his counsel failed to understand the Court's directive, they could have sought clarification from the Court; instead, they apparently chose not to comply. The Court's order is clear: serve a declaration explaining why Miller is unable to produce relevant documents. Accordingly, Miller is hereby PRECLUDED from using any electronic files as evidence that he has not already produced to IBM.

*f.      confidential document designations*

Finally, IBM argues that Miller continues to designate documents as confidential that are not entitled to confidential treatment. On February 6, the Court ordered Miller to show good cause why each specific document should receive confidential treatment. IBM requests that the Court release all of Miller's documents from any further protection as a failure to comply with the Court's orders. In response, Miller argues that IBM has not cited specific documents that are not confidential.

In IBM's reply, it argues that none of Miller's produced documents are entitled to confidential treatment. As Miller's proffered reason for not complying with the Court's previous order is in direct contrast to the Court's order and, at the latest, rectified by IBM's reply, Miller shall either (a) show good cause for <u>all</u> produced documents, or (b) de-designate all produced documents. If Miller fails to comply with this Order by April 21, 2006, the Court shall release all Miller's documents from any further protection.

3.      <u>"Non-retained expert" witnesses</u>

Next, IBM argues that Miller has failed, despite a court order compelling him to do so, to make six witnesses - Norm Capper, Edward Nixon, Yuri Voladarsy, Neil Blackley, Dimitry Dukhovny, and Michael Walker - available for deposition. In response, Miller argues that IBM had not proposed dates for the depositions or even suggested that it still wanted to take them.

11

1   Upon review of the record in this matter, the Court finds that Miller's response is not
2   credible. On January 30, 2006, IBM's counsel asked in am email to Mr. Mueller, Miller's New
3   Jersey counsel, to "please let me know what dates Mr. Miller's experts would be available for
4   deposition." IBM's counsel confirmed in a follow-up email of January 31, 2006 that "[w]e want to
5   take the deposition of anyone who is going to give what Miller characterized as 'expert' testimony."
6   March 9, 2006 Kieve Decl. (Doc. #357), Exs. I and J.

7   On February 7, 2006, the day after the Court entered its February 6 order directing Miller to
8   make these witnesses available for deposition, IBM's counsel wrote to Mr. Mueller asking "to take
9   the depositions of the persons listed in part E of Her Honor's order." *Id.* at Ex. E. IBM's counsel
10  then asked that Mr. Mueller "please give me a call to discuss how we can pull all this together in the
11  next 29 days and start setting some dates." *Id.* IBM states, and Miller does not deny, that it received
12  no response to this request.

13  On February 24, 2006, IBM's counsel again sent a letter requesting that Miller provide
14  available deposition dates for these witnesses. March 16, 2006 Kieve Decl. (Doc. #363), Ex. E. Mr.
15  Mueller responded by stating that IBM must request specific dates. *Id.*, Ex. F. On February 27,
16  IBM proposed March 1, 2, 3, 6, 7 and 8 for the six depositions. *Id.*, Ex. G. On March 1, Mr.
17  Mueller emailed IBM's counsel at 12:20 p.m. to offer Edward Nixon for deposition by telephone on
18  March 2 at 2 p.m. *Id.*, Ex. H. Other than this last minute offer to make Mr. Nixon available by
19  telephone, Miller has not made any of the witnesses available for deposition.

20  Upon review of this documented history, the Court finds no excuse for Miller's failure to
21  comply with its previous orders and make these six witnesses available for deposition. As the Court
22  warned that it would consider preclusion sanctions for failure to comply with its February 6 Order,
23  the Court finds preclusion sanctions appropriate. Accordingly, the Court hereby PRECLUDES
24  Miller from using the testimony of Norm Capper, Edward Nixon, Yuri Voladarsy, Neil Blackley,
25  Dimitry Dukhovny, and Michael Walker in this case.

26  4.   Expert discovery

27  Finally, IBM argues that Miller has not furnished any of the expert materials as ordered. As

part of its February 6 Order, the Court directed Miller to furnish IBM with updated expert reports that comply with FRCP 26(a)(2)(B) and to respond to IBM's outstanding expert discovery requests. Miller does not address this issue in his opposition. The Honorable Martin J. Jenkins, presiding judge in this matter, also addressed the outstanding expert discovery at a status conference on April 11, 2006. At the status conference, Judge Jenkins ordered Miller to provide a summary of expert witness testimonies by April 14, 2006, and complete expert depositions by April 28, 2006. Doc. #410. To the extent not addressed by Judge Jenkins, Miller must complete all expert discovery, including compliance with this Court's February 6 Order and FRCP 26(a)(2)(B), by April 21, 2008. Miller is hereby PRECLUDED from using any expert materials not produced by April 21, 2008.

## IV.   CONCLUSION

Based on this analysis, the Court hereby GRANTS IN PART and DENIES IN PART IBM's motion for sanctions as detailed above. Failure to comply with this Order shall result in the imposition of further sanctions, including the potential termination of this case.

**IT IS SO ORDERED.**

Dated: April 14, 2006

MARIA-ELENA JAMES
United States Magistrate Judge